**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **NO. CR 05-1417 RB** |
| | ) | |
| **HENRY LOPEZ,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** came before the Court on Defendant's (Henry Lopez) Motion in Limine (Doc. 22), filed on November 4, 2005, and the Government's Motion in Limine (Doc. 27), filed on November 9, 2005. Having considered the submissions, arguments of counsel, and being otherwise fully advised, I deny in part and grant in part both parties' motions as follows.

**I.     Background**.

According to the Government's theory of the case, on or about January 9, 2005, Lopez asked Cruis Galaviz Orozco to drive a vehicle loaded with marijuana from Mexico to the United States. Lopez drove the vehicle, which he purchased on or about January 6, 2005, to Orozco's house on January 9, 2005. Thereafter, Orozco drove the vehicle to Palomas, Mexico where an unknown co-conspirator took the vehicle from Orozco while he waited in Palomas. The unidentified individual returned the vehicle to Orozco. Thereafter, Orozco attempted to drive the vehicle across the border into the United States en route to Deming, New Mexico. For his efforts, Orozco expected to be paid $2500.

On January 15, 2005, Orozco, driving Lopez's vehicle, was detained at the Columbus, New

Mexico Port of Entry.  United States Border Patrol discovered that the truck's wheels contained 158 pounds of marijuana.  Orozco, who was alone at the time his vehicle was detained at the Port of Entry, was arrested on January 15, 2005.  Subsequently, Orozco stated that Lopez "hired him to transport the marijuana" and that Lopez carried a "small handgun during one of the times Lopez asked [him] to haul marijuana."  *See* Def.'s Mot. in Limine at 1-2.  Orozco is expected to testify at trial.[1]

## II.    The Parties' Motions.

## A.    Lopez's Motion in Limine.

Lopez moved to exclude any reference at trial to "other incidents involving marijuana unrelated to this case" and "any reference to [Lopez] possessing a gun."  *See* Def.'s Mot. in Limine at 1; *see infra* Part III (detailing Lopez's prior incidents involving marijuana).  Specifically, Lopez sought to exclude the following marijuana-related incidents: (1) July 2003 - Lopez's alleged role in transporting the marijuana seized by authorities from Efrain Hidalgo; (2) January 2003 - seizure of marijuana from a truck registered to Lopez's common-law wife; and (3) date  unknown - seizure of a 1997 Chevrolet truck from Lopez's home.  Additionally, Lopez moved to exclude evidence that Lopez possessed a handgun when he allegedly asked Orozco to transport marijuana on a different occasion than the underlying facts here.[2]

---

[1]*See United States v. Orozco*, No. 05-CR-619 (pending) (Brack, J. presiding).  Orozco pled guilty to possession with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(b)(1)(C), and conspiracy to import marijuana, in violation of 21 U.S.C. § 952(a), and has agreed to cooperate with the United States and testify at trial.

[2]Because the Government indicated at the November 10, 2005 motion hearing that it did not seek to admit this evidence of Lopez's gun possession, Defendant's motion is granted in part.  Therein, no evidence of, or reference to, Lopez's gun possession shall be made at trial.

**B.      Government's Motion in Limine.**

The Government moved to introduce evidence of the marijuana-related incidents identified in Lopez's motion, with the exception of authorities' seizure of the 1997 Chevrolet truck.[3]  *See supra* Part II.A.  In addition, the Government moved to introduce evidence regarding Lopez's "modus operandi" in trafficking marijuana.

**III.  Analysis.**

FED. R. EVID. 404(b) provides that evidence of "other crimes, wrongs, or acts" is admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  FED. R. EVID. 404(b).  At the same time, evidence of so-called "other bad acts" is inadmissible to "prove the character of a person in order to show action in conformity therewith."  *Id.*  Hence, it is well-established that evidence of other wrongful acts is only admissible under Rule 404(b) where four requirements are met:

> 1) the evidence is offered for a proper purpose (such as proof of intent, plan, knowledge, or absence of mistake); 2) the evidence is relevant under Rule 401; 3) the probative value is not substantially outweighed by the danger of unfair prejudice under Rule 403; and 4) the Court instructs the jury to consider the evidence only for the purpose for which it was admitted.

*United States v. Tan*, 254 F.3d 1204, 1207 (10th Cir. 2001).

Moreover, "[w]here evidence is offered under Rule 404(b), the government bears the burden of showing that the proffered evidence is relevant to an issue other than character."  *United States v. Youts*, 229 F.3d 1312, 1317 (10th Cir. 2000) (quotation omitted). "The government must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the other

---

[3]Accordingly, Lopez's motion is granted to the extent that evidence of the 1997 truck incident is inadmissible.  *See supra* note 2.

acts evidence." *Id.* (internal quotation omitted).  In any case, all of the evidence related to Lopez's prior involvement with marijuana is subject to Rule 403.  *See* FED. R. EVID. 403.

Clearly, the Government satisfied its 404(b) showing here.  In its motion, the Government stated that it offered the various incidents of Lopez's prior marijuana trafficking for proper Rule 404(b) purposes.  Namely, it maintained that the incidents of Lopez's prior marijuana possession demonstrate: "(1) [Lopez's] *knowledge*, and *intent* to conspire to import marijuana; and (2) the *absence of any mistake or accident* that his vehicle was loaded with 158 pounds of marijuana.  *See* Govt.'s Mot. in Limine at 4:¶3 (citing FED. R. EVID. 404(b)) (emphasis in original).  The admissibility of Lopez's marijuana-related incidents, which the parties raised in their respective motions, is addressed in turn.  *See infra* Parts III.A.-III.C.

## A.    Modus operandi evidence: proposed testimony of Anthony Flores and Priscilla Dominguez is admissible.

The Government alleged that Lopez's January 15, 2005 conspiracy with Orozco conforms to his "modus operandi" in marijuana trafficking.  Specifically, the Government stated that Lopez recruited "young persons to traffic marijuana in his vehicles, and then when the youngsters [were] arrested, to claim lack of knowledge, and have the vehicles returned to him under the doctrine of 'innocent owner.'"  *See* Govt.'s Mot. in Limine at 1.

Therein, the Government moved to introduce the testimony of Anthony Flores and Priscilla Dominguez, "minors with whom the Defendant associates."  *See id.*  Flores and Dominguez, according to the Government, will testify as follows:

?      Anthony Flores:  Flores assisted Lopez in drug-trafficking on at least one occasion, possibly the July 7, 2003 incident.  *See infra* Part III.B.

?      Priscilla Dominguez:  Lopez solicited Dominguez to transport marijuana; Dominguez refused

4

Lopez's request.

? Either Flores or Dominguez: Lopez seeks out, and associates with, minors with the intent of soliciting them to transport marijuana; Lopez encourages these young persons to transport marijuana by supplying them with alcohol, telling them that trafficking is "easy money" and that the potential for punishment is low, because, as minors, they are immune from prosecution and, in any event, would receive a minimal sentence if caught by authorities.

*See id.* at 4.

Flores and Dominguez's respective testimony is offered for a proper 404(b) purpose. That is, their testimony tends to show that Lopez had "knowledge" that his vehicle contained marijuana on January 15, 2005 by evidencing that Lopez had a modus operandi: enlisting minors to transport narcotics, which allowed him to disclaim knowledge of the scheme. Because the probative value of this evidence is significant, and outweighs the danger of prejudice to Lopez, Flores and Dominguez's testimony, as proffered by the Government in its motion and outlined *supra*, is admissible. *See* FED. R. EVID. 403.

**B.     July 2003: evidence of Lopez's alleged role in transporting marijuana that authorities seized from Efrain Hidalgo is inadmissible.**

On July 7, 2003, federal agents detained several persons, including Efrain Hidalgo (the son of Lopez's common-law wife[4]), for possessing 100 pounds of marijuana in Luna County, New Mexico. When questioned by authorities, Hidalgo told the agents that he had stolen the marijuana from Lopez's 300 pound marijuana stash. Hidalgo alleged that he had learned of Lopez's stash and its location after overhearing a conversation between Lopez and an unknown individual. At the November 10, 2005 motion hearing, the Government stated that all of Hidalgo's associates claimed

---

[4]While Lopez's motion identified Bertha Moncada as his "girlfriend," the Government referred to Moncada as Lopez's "wife." The Government alleged that Moncada is, and was in 2003, Lopez's common-law wife. *See* Govt.'s Mot. in Limine at 2.

that the marijuana seized from Hidalgo came from Lopez's stash.

When questioned by authorities, Lopez told agents that: (1) the marijuana was not his; (2) the marijuana was smuggled into the United States by four illegal aliens; (3) those individuals could be found at mile marker 5 on Hermanas Road, south of Deming, New Mexico.  Based on Lopez's information, federal agents seized an additional 213 pounds of marijuana and detained the four aliens.  In 2005, following his arrest in the instant case, Lopez was again questioned about the July 2003 incident.  Lopez told authorities that his role in the July 2003 scheme was limited to transporting the alien drug smugglers back to Mexico.[5]

While Lopez's statements to authorities are "non-hearsay" party admissions, *see* FED. R. EVID. 801(d)(2)(A), other evidence indicating that Lopez was the source of the marijuana seized from Hidalgo and transported drug smugglers is not offered for a proper 404(b) purpose.  *See* FED. R. EVID. 404(b).  This evidence does not tend to prove "knowledge" or "intent" to conspire in the instant case given that Lopez's alleged role in the July 2003 incident is distinct from his alleged conduct in this case.  Nor does it show an "absence of mistake" or "accident" regarding the January 15, 2005 seizure of marijuana from his vehicle.

In any event, evidence of the July 2003 incident is barred by Rule 403.  *See* FED. R. EVID. 403.  Simply put, Lopez's alleged conduct related to the July 2003 incident carries little probative value as to whether, on January 15, 2005, Lopez conspired with Orozco to transport marijuana.  This is especially true given that the Government has alternative evidence that connects Lopez to the charged conspiracy.  *See supra* Part III.A.; *see also, e.g.*, *United States v. Edelberto Hernando-Bautista*, No. 05-CR-0546 (D.N.M. Aug. 5, 2005) (Brack, J.) ("The probative value of evidence concerning the

---

[5]Lopez is not, and was at no time, charged with his conduct stemming from the July 2003 incident.

Case 2:05-cr-01417-RB   Document 31   Filed 11/15/05   Page 7 of 10

2004 investigation and charge is low because the Government *may link* [*the defendant*] *to the crime through alternate evidence*...") (emphasis added).   Thus, given the low probative value of this evidence, coupled with the extremely high danger of prejudice to Lopez, it is clear that Rule 403 bars this evidence.

**C.     January 2003:  evidence of Lopez's connection to a marijuana bust involving a vehicle registered to Lopez's common-law wife is  inadmissible.**

On January 19, 2003, a United States Border Patrol agent detained a GMC pickup truck registered to Bertha Moncada (Lopez's common-law wife).[6]  The agent found that the vehicle contained 372 pounds of marijuana.  The truck's occupants, Gonzalo Rosales and Enrique Moncada (Bertha Moncada's nephew), were both questioned.   Rosales indicated that he had smuggled marijuana into the United States from Palomas, Mexico.  He stated that, in Palomas, he met an unknown co-conspirator who drove him to Deming, New Mexico where he met Enrique Moncada. Rosales and Enrique Moncada stated that they intended to deliver, in the truck registered to Bertha Moncada, the contraband to Phoenix, Arizona.  Rosales expected to be paid $1000 for his role in the scheme.  As a result of the January 2003 incident, Rosales and Enrique Moncada pled guilty to marijuana distribution charges.

Notably, Bertha Moncada was not charged in connection with the incident.   She told authorities that she did not know that there was marijuana concealed in the truck.  The vehicle was later returned to her.

Three pieces of evidence connect Lopez to the January 19, 2003 incident: (1) a piece of paper found on Rosales' person listed two phone numbers, including one with the name "Rigo" listed

---

[6]*See supra* Part III.B. (noting that Bertha Moncada is Lopez's common-law wife).

besides it -- the Government alleged that both Rosales and Moncada identified Lopez as "Rigo;"[7] (2) the cell phone in Moncada's possession belonged to Lopez;[8] (3) the truck is a so-called "family vehicle" of the Lopez/Moncada household: "the vehicle is still at the residence [Lopez] and Ms. Moncada share and [Lopez] has been seen driving the vehicle."  *See* Govt.'s Mot. in Limine at 3 n.2 (stating that Lopez drove the GMC truck in 2003).

First, as to the identity of "Rigo," when questioned by the agent, the Government stated that both Rosales and Enrique Moncada told authorities that "Rigo" was Bertha Moncada's boyfriend (i.e. Lopez).[9]  *See* Govt.'s Mot. in Limine at 2.  At the motion hearing, however, Lopez maintained that discovery materials provided by the Government show that Rosales and Enrique Moncada identified "Rigo" as Rigoberto Caro, and *not* Lopez.[10]  At the motion hearing, the parties stipulated that the phone number listed next to the name "Rigo" was not registered to, or otherwise associated with, Lopez or his residence.

Evidence that Rosales and Moncada told authorities that "Rigo" was Lopez is offered for a proper 404(b) purpose: it tends to prove that Lopez knew of Rosales'-- a drug smuggler who drove a vehicle carrying concealed marijuana into the United States from Palomas, Mexico -- January 2003 conduct.  Therein, this evidence indicates that Lopez was aware of Rosales and Moncada's scheme, which is similar to the conspiracy alleged in this matter.  The admissibility of this evidence, therefore,

---

[7]The Government stated at the motion hearing that the phone number listed next to the name "Rigo" was not registered in Lopez's name, nor to his address.

[8]To be clear, the number associated with that phone that Lopez owned, but that Moncada possessed on January 19, was *not* the number listed next to the name "Rigo" on Rosales' paper.

[9]*See supra* Part III.B. (noting that Bertha Moncada is Lopez's common-law wife).

[10]Rigoberto Caro is the brother of Bertha Moncada.

turns on Rule 403's application.  *See* FED. R. EVID. 403.

As noted *supra*, however, who Rosales and Enrique Moncada identified as "Rigo" -- Lopez or Caro -- is disputed.  What is clear, however, is that neither phone number listed on Rosales' paper, including the number listed beside the name "Rigo," proved to be associated with Lopez or his residence.  The probative value of this evidence is, therefore, slight while the danger of "confusion" at trial, and resulting prejudice to Lopez, is high.  Accordingly, pursuant to Rule 403, this evidence is inadmissible.  *See* FED. R. EVID. 403.

Second, evidence that Enrique Moncada possessed a cell phone registered to Lopez will be excluded.  The relevance of this evidence is, at most, minimal.  In any event, because its probative value is far outweighed by the danger of "confusion of the issues" by the jury, it will be excluded at trial.  *See* FED. R. EVID. 403.

Third, evidence that the GMC truck at issue in the January 2003 incident was a "family vehicle" that Lopez drove in 2003, is inadmissible.  In essence, the Government would have this Court admit evidence of the January 2003 incident to allow the jury to infer that *Bertha Moncada* employed the same modus operandi that Lopez allegedly employed here.  Following the January 2003 incident, Moncada was questioned by authorities.  Moncada: (1) disclaimed that she knew that the vehicle contained marijuana; (2) did not face charges stemming from the incident; and (3) recovered the vehicle.

To be clear, the Government presented no evidence that Bertha Moncada committed any wrongdoing related to the January 2003 incident.  Yet, even if such evidence existed, the only link between *Lopez* and this incident is that it involved Bertha Moncada's nephew and that Lopez drove the GMC truck on other occasions in 2003.  Thus, the evidence would serve to insinuate improperly

9

that Lopez's common-law wife used the same "modus operandi" that the Government claims Lopez employed here.  This clearly is not proper 404(b) evidence.  *See* FED. R. EVID. 404(b).  *Cf.* 22 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 5244 (2d ed. Supp. 2005) ("Where the charged crime was committed in a distinctive fashion, evidence that the *defendant* used a similar method to commit a different crime may serve to identify him as the guilty person.") (emphasis added).

Regardless, given the tangential nature of the evidence and that the Government has alternative evidence of Lopez's "modus operandi" at its disposal, the probative value of this evidence is low.  *See* FED. R. EVID. 403; *see supra* Part III.A. (ruling that Flores and Dominguez's testimony is admissible).  At the same time, the January 2003 and January 2005 incidents are sufficiently similar that the danger of prejudice to Lopez is significant.  Evidence of the January 2003 incident is, accordingly, barred by Rule 403.  *See* FED. R. EVID. 403.

**IT IS SO ORDERED**.


_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**